IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| PERRY MATHEW DARBY, | * | Case No. 21-17203 (DER) |
| Debtor. | * | Chapter 7 |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SETTLEMENT WITH DEBTOR PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Charles Goldstein, the Chapter 7 Trustee (the "Trustee") in the chapter 7 case of the above-captioned debtor and debtor in possession (the "Debtor"), by counsel, hereby files his *Motion to Approve Settlement with Debtor Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "Motion"), and in support thereof, respectfully represents as follows:

**Introductory Statement**

As more fully set forth below, the Trustee and the Debtor have resolved several significant issues concerning various aspects of the Debtor's chapter 7 bankruptcy case. The resolution allows the Debtor to continue operating his law firm and to be compensated appropriately for doing so. The continued operation of the Debtor's law firm will in turn allow the Debtor to produce income to, among other things, provide for payments to the Trustee to be used to pay creditors of the Debtor's estate and for the Debtor to make court ordered alimony payments to his ex-wife. The resolution reached is embodied in a settlement agreement (the "Settlement Agreement"), a copy of which attached hereto as **Exhibit A**.

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

1

Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

2. The relief sought in this Motion is based on section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Factual Background**

3. On November 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor's case was converted to Chapter 7 on December 16, 2021.

4. The Trustee was appointed herein on December 17, 2021.

5. The Debtor is an attorney, and as of the Petition Date owned and operated his own law firm, the Darby Law Group, LLC (the "Darby Law Group").

6. Prior to the Petition Date, the Debtor was previously employed by Berman, Sobin, Gross, Feldman and Darby, LLP (the "Former Firm"). Certain clients of the Former Firm were subsequently represented by the Darby Law Group.

7. Prior to the Petition Date, the Former Firm entered into a separation agreement with the Debtor related to the Debtor's pre-petition employment with the Former Firm (the "Separation Agreement"). Pursuant to the Separation Agreement, the Debtor is scheduled to receive certain payments (the "Separation Payments") from the Former Firm which are property of the Debtor's Estate. The Trustee has collected a portion of the Separation Payments to date and anticipates collecting an additional $262,856 pursuant to the Separation Agreement.

8. Prior to the Petition Date and thereafter, the Debtor has been involved in a divorce proceeding with the Debtor's now ex-wife ("Mrs. Darby"), styled as *Wendy Darby v. Perry*

*Mathew Darby*, Case No. C-03-FM-20-001684, pending in the Circuit Court of Maryland for Baltimore County (the "Circuit Court"). In relation to the divorce proceeding, the Circuit Court ordered, among other things, that the Debtor make certain alimony payments to Mrs. Darby (the "Alimony Payments"). The Debtor's ex-wife has since sought judicial intervention in both the Bankruptcy Court and the Circuit Court with respect to the Debtor's failure to make certain Alimony Payments.

9. The Internal Revenue Service (the "IRS") initiated an action against the Debtor and Mrs. Darby for the non-payment of income taxes that resulted in a lien against their former residence (the "Tax Lien"). Mrs. Darby has asserted an "innocent spouse" defense in an effort to absolve any liability on her behalf on the IRS tax debt, which issue is presently on appeal with the IRS. While the "innocent spouse" issue remains pending with the IRS, the former residence of the Debtor and Mrs. Darby was sold, with the net proceeds of the sale being partially paid to the IRS in satisfaction on the Tax Lien and to the Debtor's Estate, and the remaining $76,960.10 (the "IRS Escrow Funds") being held in escrow by the Trustee.

10. Issues arose during the case as to what constitutes property of the Debtor's Estate, how creditors will be paid from assets of the Estate, and what non-Estate assets may be available for the Debtor to satisfy his personal obligations, including the Alimony Payments. These issues are complex and would require a significant amount of legal and factual analysis that could prove very costly to the Debtor's Estate if they were to be tried.

11. The Trustee and the Debtor have engaged in arm's length negotiations to resolve the foregoing issues. As a result of such discussions, the Trustee and the Debtor have reached a resolution on the issues described herein as well as the continued operation of the Darby Law Group for the benefit of both the Estate and the Debtor.

12. The terms of such resolution are set forth in the Settlement Agreement.

## The Settlement Agreement

13. The Settlement Agreement is the result of extensive arms-length negotiations between the Trustee and the Debtor (the "Parties"). The most salient provisions of the Settlement Agreement include the following:

   a. Settlement Payment: The Debtor shall pay three-hundred three thousand one-hundred dollars ($303,100) (the "Settlement Payment") to the Trustee on the following payment schedule, and as more fully set forth in the Settlement Agreement:

      i. A one-time payment of fifty thousand dollars ($50,000), which payment has been received by the Trustee;
      ii. A one-time payment of three-thousand nine-hundred dollars ($3,900) to be made on or before May 1, 2025; and
      iii. Twenty-eight (28) consecutive monthly payments of eight-thousand nine-hundred dollars ($8,900) each, to be made on the first of the month beginning on June 1, 2025 and ending on September 1, 2027.

   b. Prepayment Discount: Upon the making of a payment by the Debtor to the Trustee, other than the first payment to be made pursuant to Section 1.a. of the Settlement Agreement, in the amount of $50,000 or greater, the Trustee shall reduce the total amount of the Settlement Payment owed by an additional amount equal to the amount of 10% of the payment made.

   c. Separation Payments and Other Funds from Prior Firm are Property of the Estate: The Separation Payments already received by the Trustee shall remain with the Trustee as property of the Debtor's estate. The remainder of the Separation Payments shall be received by the Trustee as property of the Debtor's Estate. Any other funds determined to be due to the Debtor from the Prior Firm are property of the estate, and in the event said funds are paid to the Debtor, the Debtor shall immediately pay said funds over to the Trustee.

   d. Additional Revenue Generated by Darby Law Group: The remaining revenue generated by the Darby Law Group over and above the funds necessary to satisfy the periodic payments of the Settlement Payment may be used by the Debtor to pay himself a salary, cover the operating expenses of the firm and make alimony payments.

   e. Quarterly and Other Financial Reporting to Trustee: While amounts remain due and owing under the Settlement Agreement, the Debtor shall provide financial information to the Trustee on a quarterly basis, which information shall be provided

      to the Trustee no later than the 20th day following the quarter-end and shall include the following:

          i. Profit and loss statement for the Darby Law Group.
         ii. Balance sheet for the Darby Law Group.
       iii. Copies of all bank statements and statements for all other financial accounts for the Darby Law Group.
       iv. Other information that may be requested by the Trustee.

  f. <u>Tax Returns</u>: While amounts remain due and owing under the Settlement Agreement, the Debtor shall also provide to the Trustee a copy of all tax returns and tax return extension requests when filed by the Debtor. Tax returns and extension requests shall be provided to the Trustee within 20 days after the due date or after the document is filed, whichever is earlier.

  g. <u>IRS Escrow Funds Distribution</u>: Upon a final determination by the IRS or a court of competent jurisdiction with respect to the innocent spouse defense asserted by Mrs. Darby, and such written determination received by the Trustee: (i) in the event that the ruling is in favor of Mrs. Darby, the IRS Escrow Funds will be paid over to Mrs. Darby; or (ii) in the event that the IRS rules against Mrs. Darby, the IRS Escrow Funds will be paid over to the IRS.

  h. <u>Court Approval</u>. The Settlement Agreement is subject to Court approval.

## Relief Requested

14. By this Motion, the Trustee respectfully requests this Court's approval of the Settlement Agreement as agreed to by the Parties and by entering the Order in the form submitted.

## Applicable Standard

15. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." In turn, Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

16. As a matter of policy, Bankruptcy Rule 9019(a) grants courts broad authority to consider and approve compromises and settlements involving the debtor and the bankruptcy estate. *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390

U.S. 414, 424 (1968) ("[I]n administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims to which there are substantial and reasonable doubts"); *United States ex rel. Rahman v. Oncology Assoc., P.C., et al.*, 269 B.R. 139, 149 (D. Md. 2001) ("Settlements are to be encouraged, and it should not be the intention of a court to discourage settlements."). Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the bankruptcy court. *In re Michael*, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

17. Approval of a compromise under Rule 9019(a) is appropriate when the compromise is fair, equitable and in the best interests of the debtor's estate. *See, e.g., TMT Trailer Ferry*, 390 U.S. at 424; *Rahman*, 269 B.R. at 150 ("A settlement should be approved if it provides for the best possible realization upon available assets . . . without undue waste or needless or fruitless litigation.") (quoting *In re Bowman*, 181 B.R. 836, 847 (Bankr. D. Md. 1995)). In general, compromises in the bankruptcy context should be approved unless they "are unreasonable." *See Rahman*, 269 B.R. at 149 ("A court may approve a settlement over objections unless the proposed settlement falls below the lowest point in the range of reasonableness.") (internal quotations omitted).

18. To determine whether a settlement is fair and reasonable, courts weigh the value of the claim being settled against the value of the settlement. *See TMT Trailer Ferry*, 390 U.S. at 424 ("Basic to [the process of evaluating the reasonableness of a settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation."). In striking this balance, courts consider the following factors: "(1) the probability of success in litigation; (2) the difficulties if any, to be encountered in the manner of collection; (3) the complexity of the litigation involved (including the expense, inconvenience and delay necessarily

attending the litigation); and (4) the paramount interest of the creditors and a proper deference to their reasonable views." *Rahman*, 269 B.R. at 149.

19. The Court is not required to conduct a "mini-trial" of the underlying case, but instead must only decide whether the settlement proposed falls "below the lowest point in the range of reasonableness." *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (citations omitted); *see also In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 2000).

20. The Trustee submits that the terms embodied in the Settlement Agreement represent an appropriate exercise of its business judgment and that the Settlement Agreement is fair, reasonable and in the best interests of the Debtor, its estate and creditors.

21. With respect to the first and third of the *Rahman* factors, the Trustee submits that although he believes that there is substantial legal support for his position that a significant portion of the income coming into the Darby Law Group post-petition is property of the Debtor's Estate subject to the control of the Trustee, the outcome of any litigation with respect to that issue is uncertain. Moreover, even if successful in litigating this issue, the victory would be at a significant expense due to the complexity of the determination and valuation of what is Estate property and its proper value. Resolving the issues between the Parties on the terms set forth in the Settlement Agreement provide for significant funds to be paid into the Debtor's Estate to be available for creditors without the risk and cost of litigation.

22. With respect to the second *Rahman* factor, the Settlement Agreement removes any uncertainty regarding payment of the Settlement Payment. First, the original $50,000 payment has already been made. Second, the remaining payments are quite reasonable in their amount (one payment of $3,900 and remaining payments of $8,900) and are not required to be made until beginning in May, 2025. And finally, in addition to the significant amount of time allotted for the

Darby Law Group to earn the fees necessary to make the payments under the Settlement Agreement, there is also a discount provided for early payment. These factors, coupled with the fact that the Darby Law Group remains property of the Estate and under the ultimate control of the Trustee, ensure that under the Settlement Agreement, there is little risk of difficulty in collecting the Settlement Payment in full.

23. With respect to the last *Rahman* factor, the main creditors in this case are the IRS and the administrative creditors of the Debtor's Estate. Resolving the issues surrounding the identity of Estate property under these circumstances is prudent and in the best interest of creditors. It resolves a potentially expensive piece of litigation over what constitutes Estate property, provides a payment schedule for the Debtor to pay significant sums to eh Debtor's Estate to pay creditors and allows the Debtor to receive income from the operation of the Darby Law Group to pay himself and make the Alimony Payments. Allowing funds from the operation of the Darby Law Group, over and above what is necessary to make the Settlement Payment, to be used to pay Alimony Payments will also lessen the likelihood of additional litigation over the Alimony Payments, which litigation requires the Trustee's attention and representation by counsel.

24. Finally, regarding the reasonableness of the terms of settlement, the Trustee submits that it is well above the lowest point in the range of reasonableness as the estate will receive payments totaling over three-hundred thousand dollars ($300,000) over the next five (5) years. Combined with the value of payments received by the Estate to-date, which include prior Separation Payments, plus additional Separation Payments expected of approximately $262,000. In total, the recovery for the Estate will be approximately $803,000. The primary creditor is the IRS, and the Trustee estimates that final distribution to the IRS, based upon their combined secured and priority claims, and with no discount applied for pre-payments, would exceed 38%,

representing a significant recovery. Given the attendant risks of litigation and costs associated with leaving these issues unresolved, the Trustee believes that it has met the standard for approval of the Settlement Agreement, which is in the best interest of the Estate and its creditors, by this Court.

25. Accordingly, the Trustee submits that the Settlement Agreement reflects a sound exercise of his business judgment and that such settlement falls well within the range of reasonableness required for its approval.

### Local Rule 9013-2 Statement

26. Pursuant to Local Rule 9013-2, the Trustee will not be filing a separate memorandum with respect to this Motion, but relies solely upon the grounds and authorities set forth in the Motion.

### Local Rule 9013-6 Statement

27. In accordance with Local Rule 9013-6, which requires all parties in a contested matter to file a statement in compliance with Local Rule 7012-1(b), the Trustee hereby consents to the entry of a final order or judgment by the presiding Bankruptcy Judge.

WHEREFORE, the Trustee respectfully requests that the Court approve the Settlement Agreement, and grant such other relief as this Court may deem just and proper.

Dated: July 12, 2023                 WHITEFORD, TAYLOR & PRESTON L.L.P.

                                                By:    */s/ Brent C. Strickland*
                                                           Brent C. Strickland (Bar No. 22704)
                                                           111 Rockville Pike, Suite 800
                                                           Rockville, MD 20850
                                                           Phone: (410) 347-9402
                                                           Fax: (410) 223-4302
                                                           bstrickland@whitefordlaw.com
                                                           *Special Litigation Counsel*
                                                           *for Chapter 7 Trustee*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2023, a copy of the foregoing was served via the Court's CM/ECF system to the parties listed below and to the parties on the attached service list by first class mail, postage prepaid.

/s/ Dennis J. Shaffer
Dennis J. Shaffer (Bar No. 25680)
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street, 15th Floor
Baltimore, Maryland 21202-1636
Phone: (410) 347-9437; Fax: (410) 223-4337
dshaffer@whitefordlaw.com

Melissa Goldmeier    melissa.goldmeier@usdoj.gov, Tracy.Lichtel@usdoj.gov
Charles R. Goldstein    trustee@3cubed-as.com, MD13@ecfcbis.com
Robert Grossbart    robert@grossbartlaw.com, debra@grossbartlaw.com
Alan Carl Lazerow    Alan.Lazerow@usdoj.gov, Colleen.Nardi@usdoj.gov
Keith M. Lusby    klusby@gebsmith.com
Dorothy Carol Sasser    dsasser@siwpc.com, bkreferrals@siwpc.com;siwbkecf@siwpc.com;siwpc@ecf.courtdrive.com;siwattecf@siwpc.com
Dennis J. Shaffer    dshaffer@wtplaw.com, kmccruden@wtplaw.com;pbowling@wtplaw.com
Brent C. Strickland    bstrickland@wtplaw.com, mbaum@wtplaw.com
Jacob Christian Zweig    jzweig@evanspetree.com, crecord@evanspetree.com

*12924010*